**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Lois Mae Lussier, individually, and as Trustee for the Heirs and Next of Kin of Brittany Ann Yellow-Lussier, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, and Unknown Red Lake Detention Center staff or officers, individually, | **(Jury Trial Demanded)** |
| Defendants. | |

**Introduction**

Plaintiff Lois Mae Lussier, in her own right and as Trustee for the Heirs and Next of Kin of Brittany Ann Yellow-Lussier, brings this action against Defendant the United States of America. This is an action for relief under the Federal Tort Claims Act for the wrongful death of the decedent, Brittany Ann Yellow-Lussier. While in custody, Ms. Yellow-Lussier, became so severely ill that United States agents were obligated to provide her with immediate medical attention. The agents did not provide Ms. Yellow-Lussier the immediate medical care required resulting in her death. The agents' negligence was the proximate cause of her death.

Also, because the Red Lake Detention Center staff—federal agents—failed to provide Ms. Yellow-Lussier with immediate attention for her medical condition for three days, she suffered cruel and usual punishment. The agents violated Ms. Yellow-Lussier's

1

constitutional rights under the Eighth Amendment of the U.S. Constitution. Thus, each agent, individually or collectively are liable for Ms. Yellow-Lussier's death.

## The Parties

1.     Plaintiff Lois Mae Lussier is Trustee for the Heirs and Next of Kin of the decedent,  Brittany Ann Yellow-Lussier, and is a Minnesota citizen. Lois Mae Lussier, brings this action individually and as the appointed Trustee for the Heirs and Next of Kin of Brittany Ann Yellow-Lussier. Lois Mae Lussier brings this action pursuant to Minnesota's wrongful death statute, Minnesota Statutes § 573.02, *et seq.*

2.     The Defendant, United States of America, acted through its agency, the Bureau of Indian Affairs, Department of the Interior. The Red Lake Detention Center, a prison in Red Lake, Minnesota, in which the decedent Ms. Yellow-Lussier was in custody, is regulated by the Bureau of Indian Affairs which governs the day-to-day operations of the facility and its employees and is guided by the rules, regulations, or policy statements of the federal Bureau of Prisons.

3.     The unknown defendants are employees of the Red Lake Detention Center, a prison in Red Lake, Minnesota, in which the decedent Ms. Yellow-Lussier was in custody, is regulated by the Bureau of Indian Affairs which governs the day-to-day operations of the facility and its employees and is guided by the rules, regulations, or policy statements of the federal Bureau of Prisons. The acts or omissions of the unknown defendants occurred within their scope of employment. They are unknown defendants at this time because documents in the custody of the Plaintiff do not disclose the persons who were present

while Ms. Yellow-Lussier experienced her medical conditions that required immediate attention.

## Jurisdiction and Venue

4.    This action is brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.,* against the United States of America, which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the federal district court. This Court also has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1). This Court also has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) to grant the monetary relief sought under the Federal Tort Claims Act.

5.    Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1402(b) or 28 U.S.C. §§ 1391(a)(2), 1391(b)(1),1391(b)(2), 28 U.S.C. § 1391(c), or 28 U.S.C. § 1391(e)(1)) because a substantial part of the events or omissions giving rise to the cause(s) of action occurred in Minnesota.

6.    Plaintiff Lois Mae Lussier timely filed an administrative complaint on June 5, 2020 with the United States Department of the Interior related to the death of Brittany A. Lussier.

7.    By letter dated August 25, 2021, the United States Department of the Interior denied Plaintiff Lois Mae Lussier's administrative claim. The Department advised Lois Mae Lussier, that if she disagreed with the denial, she had the right to file a law suit "within six months after the date of mailing this letter…in an appropriate United States District Court."

8.    This lawsuit is timely filed under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), since it has been filed in this Court within six months of the date of the mailing of

the administrative denial of the asserted claim with the United States Department of the

Interior.

**Facts**

I.      **Brittany Yellow-Lussier was an inmate of the Red Lake
        Detention Center that is subject to the rules,
        regulations and policy statements of the federal Bureau
        of Prisons through the Bureau of Indian Affairs.**

9.      Brittany Ann Yellow-Lussier was born October 16, 1996, and died June 16,

2018. She was 21 years-old at the time of her death.

10.     On June 10, 2018, Red Lake Law Enforcement, Red Lake Minnesota, arrested

Ms. Yellow-Lussier for an outstanding arrest warrant. Ms. Yellow-Lussier was transported to

the Red Lake Detention Center, which is located on the reservation of the Red Lake Band

of Chippewa.

11.     The Red Lake Band of Chippewa has entered into a Compact of Self

Governance with the United States Department of the Interior.

12.     The Compact of Self Governance includes the authority to administer a

detention center, and law enforcement.  The Red Lake Detention Center is under the

jurisdiction of the Bureau of Indian Affairs, Office of Justice Services, Department of the

Interior.

13.     The Department of the Interior is an agency of the Defendant United States

of America.

14.     The Red Lake Detention Center also follows the rules, regulations, or

program statements of the U.S. Department of Justice, Federal Bureau of Prisons.

4

15.     As a result, under federal law, the Red Lake Detention Center's staff inclusive of law enforcement officials employed at the Center, are deemed employees of the Defendant United States of America, when acting out functions authorized in or under a self-determination contract.

16.     The Detention Center staff were acting within the scope of employment as federal employees in accordance with the Federal Tort Claims Act (August 2, 1946, ch.646, Title IV, 60 Stat. 812, "28 U.S.C., Pt.VI Ch.171" and 28 U.S.C. § 1346).

17.     Detention Center employees were charged with the basic care of Ms. Yellow-Lussier while she was in their custody to include the following:

1.) Safety;

2.) Security;

3.) Order;

4.) Care;

5.) Program Activity;

6.) Justice; and

7.) Administration and Management.

**II.      Ms. Yellow-Lussier complains about symptoms of chest pain, difficulty of breathing, and coughing up blood but no immediate medical attention is given.**

18.     Immediately following her incarceration in the Red Lake Detention Center on June 10, 2018, Ms. Yellow-Lussier, complained directly to Detention Center staff of the following medical symptoms: chest pain; difficulty breathing; and coughing up blood. In short, Ms. Yellow-Lussier was an inmate in the Detention Center.

19.     Ms. Yellow-Lussier's medical symptoms did not subside and continually worsened. For at least three days and nights, Ms. Yellow-Lussier complained to Red Lake Detention Center staff of her continuing deteriorating health. Staff acknowledged her symptoms. Staff acknowledged Ms. Yellow-Lussier's complaints of chest pain; difficulty in breathing, and coughing up of blood. The Red Lake Detention staff, during the three days Ms. Yellow-Lussier was in their care, did not render medical aid to her. They did not seek medical attention from any doctor, nurse, or any other health professional regarding Ms. Yellow-Lussier's symptoms or worsening health condition.

20.     Ms. Yellow-Lussier's symptoms of chest pain, difficulty breathing; and coughing up blood, despite her age, were indicative of or related to myocardial infarction.

21.     The United States Department of Justice, Federal Bureau of Prisons, regulates all prisons and detention centers of all persons detained or incarcerated within those facilities.

22.     The United States Department of Justice, Federal Bureau of Prisons issues program statements that govern the patient care of all persons detained or incarcerated within all prisons and detention centers.

### III.   Bureau of Prisons Program Statement for inmate medical care mandates immediate attention for acute or emergent medical conditions.

23.     The Federal Bureau of Prisons Program Statement for Patient Care identifies the purpose and scope of the Statement, and is accurately quoted as follows: "To effectively deliver medically necessary health care to inmates."

24.     Under section 7(a) of Federal Bureau of Prisons Program Statement for

6

Patient Care governing the scope of services regarding the categories of care, includes what is "medically necessary—acute or emergent." Section 7(a) of the Federal Bureau of Prisons Policy Statement is accurately quoted for "acute or emergent medical conditions" as follows: "[m]edical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening."

25.     Examples of acute or emergent medical conditions are identified under section 7(a) of the Bureau of Prisons Program Statement for Patient Care included myocardial infarction, among others.

26.     Conditions under the Bureau of Prisons Program Statement for Patient Care, Section 7(a) to treatment for conditions for the category of acute or emergent medical is accurately quoted as follows: "is essential to sustain life or function and warrant immediate attention."

27.     "Warrant" means "justify or necessitate"; "officially affirm or guarantee." New Oxford American Dictionary 1949 (Angus Stevenson, Christian A. Lindberg eds., 3rd ed., Oxford University Press 2010).

28.     The medical care directive of the Bureau of Prisons Program Statement for acute or emergent medical conditions is mandatory. The conditions that a person exhibits identified as acute or emergent medical conditions necessitates, justifies, officially affirms, or guarantees the inmate receives immediate attention.

### IV.     Ms. Yellow-Lussier suffers for three days without immediate attention as her medical conditions worsen.

29.     Ms. Yellow-Lussier did not receive immediate attention from Red Lake

Detention Center staff on June 10, 2018 when she exhibited acute or emergent medical conditions. Yet, Ms. Yellow-Lussier continued to complain and her conditions worsened.

30.    Ms. Yellow-Lussier did not receive immediate attention from Red Lake Detention Center staff on June 11, 2018 when she exhibited acute or emergent medical conditions. Yet, Ms. Yellow-Lussier complained and her conditions worsened.

31.    Ms. Yellow-Lussier did not receive immediate attention from Red Lake Detention Center staff on June 12, 2018 when she exhibited acute or emergent medical conditions. Yet, Ms. Yellow-Lussier complained and her conditions worsened.

32.    Ms. Yellow-Lussier did not receive immediate attention from Red Lake Detention Center staff on June 13, 2018 when she exhibited acute or emergent medical conditions. Yet, Ms. Yellow-Lussier complained and her conditions worsened.

> **V.    After three full days of suffering without immediate medical attention, Ms. Yellow-Lussier is finally transported to a University of Minnesota medical facility, but treatment is too late and she dies.**

33.    Finally, on June 14, 2018, Red Lake Detention staff alerted medical professionals about Ms. Yellow-Lussier's medical conditions. As a result, Mr. Yellow-Lussier was transported to the Red Lake Hospital, Red Lake Reservation, Minnesota for medical care.

34.    According to the Red Lake Hospital Medical Record/Emergency Room Encounter/Progress Notes, dated 14 June 2018, Ms. Yellow-Lussier was provided with the following medical care:

- Electrocardiogram (EKG) which disclosed sinus tachycardia, an abnormally high heart rate, and a strain pattern anatomic left ventricular hypertrophy.

8

- Chest Radiograph, which disclosed patchy pulmonary infiltrates on both the right and left lungs, an indicator of disease.

35.     The Red Lake Hospital's Clinical Course was as follows:

- "Pt was given IVF NS and then Ativan 1mg IV x 2 and rocephin 2 grams IV and felt a bit better but her troponin, BNP and D-dimer were all elevated so pt was given ASA 324 mg po; Plavix 300 mg po; heparin 4000 units IV and presented to Dr. Markowitz the cardiologist on call in U of M at 2330 hrs and pt was accepted and will go by flight as North Memorial will fly her."

36.     Additionally, the Red Lake Hospital assessed the Ms. Yellow-Lussier with the following:

1.) INSTEMI, Non-ST-elevation myocardial infarction (a type of heart attack);

2.) Pneumonia;

3.) Anxiety;

4.) Elevated D-Dimer "Critically High," a small protein fragment in the blood; and

5.) Acute Urinary Tract Infection.

37.     According to the Red Lake Hospital, Ms. Yellow-Lussier's emergency room encounter was labeled as "URGENT." Ms. Yellow-Lussier's condition was so critical that she needed to be transferred to another medical facility via helicopter.

38.     On June 15, 2018, the Ms. Yellow-Lussier was transferred, by helicopter, to the University of Minnesota Medical Center, Minneapolis, Minnesota at 12:15 am.  By the time she arrived at the University of Minnesota, her staph infection was so severe causing septic shock that an operation to repair her heart valve was deemed impossible by the medical staff.

9

39.     Ms. Yellow-Lussier remained under the care of the University of Minnesota Medical Center from June 15, 2018, until she died the next day on June 16, 2018.

40.     The University of Minnesota Medical Center listed the Decedent's present illness as "severe AS (aortic stenosis) Secondary to AV (arterievenus) endocarditis.

41.     The University of Minnesota Medical Center listed the following as the Hospital Course for the Decedent:

- 21-year-old with PMHX of bicuspid AV endocartitis, S/p AVR."  IV drug user who was admitted to an OSH from prison from hypotension, tachypnea who was transferred from an outside hospital with chest pain and respiratory failure.  She was incarcerated for 5 days prior to presentation.  On 6/10 and on 6/14 reported severe chest pain and orthopnea.  She did state for two months prior to presentation she had cough hemoptysis.  No fever or night sweats.

- At the outside hospital, she was noted to have an elevated troponin and d-dimer she was hypotensive was give 1L IVF ceftriaxone.  On arrival, she was very tachypnea and hypotensive and was intubated that morning.

- Echo showed severely depressed EF (10-20%) moderate to severe diffuse hypokinesis, moderately reduced RVFx, dilated ascending aorta (4.1 cm), AVR with a mobile echo dense mass (0.8X0. 7cm) on the ventricular side of the valve with severe AS mean of 39 mmHG DVI 0.21.  CTA showed 1.7x0, 9cm highly mobile vegetation severe AS planimetry 0.74CM@ an aortic root abscess involving the aorto mitral curtain mild dilated ascending aorta (3.9X3.7cm) all three major epicardial vessels patent.

- A swan was placed initial numbers RA 10 PA 36/22 PCWP 22 cl 2.3 CO 3.7 SVR 1404, she was started on nipride and a lassix ggt and has diuressed 714 CC yesterday net negative.  Her index was 1.5 this am despite nipride, so she was started on dobutamine.

- Because she was on dobutamine and nipride she became hypotensive started ACLS CPR and epi vasopressin ACLS with chest compressions with PEA and non-shockable rhythm.  She died on June 16, 2018 at 1620.

10

42.     But for her lack of immediate attention to her medical condition while an inmate of the Red Lake Detention Center, Ms. Yellow-Lussier would have been a candidate for valve replacement surgery. Instead, because Ms. Yellow-Lussier did not receive immediate attention for the conditions she complained of, chest pain, blood in her sputum, and shortness of breath, she had "missed her window" of opportunity to survive. Hence, the University of Minnesota Medical Center, by the time it received Ms. Yellow-Lussier as a patient, could not operate on her. The prolonged absence of immediate attention by Red Lake Detention Center staff exacerbated her medical condition resulting in or contributing to staph infection, aortic abscess, and acute shock.

43.     Red Lake Detention Center staff failed to provide or allow access to medical care for Ms. Yellow-Lussier as an inmate.  The Detention Center's staff had a duty to render Mr. Yellow-Lussier immediate attention under the Bureau of Prisons Program Statement for acute or emergent medical conditions.

44.     Red Lake Detention Center staff knew Ms. Yellow-Lussier was experiencing acute or emergent medical conditions.

45.     Because Red Lake Detention Center staff did not render Ms. Yellow-Lussier immediate attention for her acute or emergent medical conditions, Ms. Yellow-Lussier suffered for no less than three days while under the care of the Red Lake Detention Center.

46.     Prior to her death, Ms. Yellow-Lussier, provided essential domestic and childcare to her immediate and extended family. Ms. Yellow-Lussier's contribution to her family enabled other family members to hold gainful external employment and to provide traditional food sources to the family. Ms. Yellow-Lussier did not work outside of the home.

11

47. The names and Addresses of the decedent's next of kin, with an interest in her estate, are:

    a.    Rodney Lussier -Father, PO Box 1065, Red Lake, MN 56671

    b.    Deloris Yellow -Mother, 2816 12th Ave. S., Minneapolis, MN 55407

    c.    Geraldine Lussier -sibling, PO Box 1065, Red Lake MN 56671

    d.    Samantha Lussier -sibling, PO Box 1065, Red Lake, MN 56671

    e.    Brycen Lussier -sibling, PO Box 1065, Red Lake MN 56671

    f.    Justice Lussier -sibling, PO Box 1065, Red Lake, MN 56671

    g.    Janice Hegg, Unknown Address, resides in Bemidji, MN.

## COUNT I
### Negligence

### Federal Tort Claims Act 28 U.S.C. § 1346(b)

**The Red Lake Detention Center staff had a duty to provide Ms. Yellow-Lussier with immediate medical attention but, breached that duty resulting in her death.**

48. Plaintiff incorporates each paragraph or allegations is if fully restated to support the claim asserted.

49. Under Minnesota law, a claim for negligence in a wrongful-death action requires proof that (1) the defendant had a duty; (2) the defendant breached that duty; (3) there was a death; and (4) the breach of duty caused the death.

50. Red Lake Detention Center acted within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to the plaintiff in accordance with the laws of the state of

Minnesota. See, 28 U.S.C. § 1346(b).

51.     Plaintiff Lois Mae Lussier may bring this claim under Minnesota's wrongful-death statute, Minnesota Statutes § 573.02.

52.     Ms. Yellow-Lussier was an inmate in and under the custody of the Red Lake Detention Center.

53.     Upon Ms. Yellow-Lussier's incarceration on June 10, 2018, she immediately experienced symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained to Red Lake Detention Center staff about her condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow-Lussier immediate attention.

54.     On June 11, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

55.     On June 12, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

56.     On June 13, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

57.     On June 14, 2018 Red Lake Detention Center staff provided Ms. Yellow-

Lussier medical attention and transported her to a local hospital. Ms. Yellow-Lussier's medical condition was in a state that required her to be transported, by helicopter, to the University of Minnesota Medical Center, in Minneapolis, Minnesota.

58. On June 16, 2018 Ms. Yellow-Lussier died.

59. Red Lake Detention Center staff knew Ms. Yellow-Lussier was experiencing acute or emergent medical conditions.

60. Red Lake Detention Center staff knew Ms. Yellow-Lussier's acute or emergent medical symptoms of chest pain, shortness of breath, and coughing up of blood were indicative or related to myocardial infarction.

61. Red Lake Detention Center staff knew Ms. Yellow-Lussier's acute or emergent medical symptoms of chest pain, shortness of breath, and coughing up of blood were indicative or related to myocardial infarction, despite her age.

62. Red Lake Detention Center staff knew Ms. Yellow-Lussier was experiencing acute or emergent medical conditions on June 10, 2018, June 11, 2018, June 12, 2018, and June 13, 2018.

63. Red Lake Detention Center staff did not give Ms. Yellow-Lussier immediate attention for her acute or emergent medical condition.

64. Under section 7(a) of Federal Bureau of Prisons Program Statement for Patient Care governing the scope of services regarding the categories of care, includes what is "medically necessary—acute or emergent." Section 7(a) of the Federal Bureau of Prisons Policy Statement is accurately quoted for "acute or emergent medical conditions" as follows: "[m]edical conditions that are of an immediate, acute or emergent nature, which without

14

care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening."

65. Examples of acute or emergent medical conditions are identified under section 7(a) of the Bureau of Prisons Program Statement for Patient Care included myocardial infarction, among others.

66. Conditions under the Bureau of Prisons Program Statement for Patient Care, Section 7(a) to treatment for conditions for the category of acute or emergent medical is accurately quoted as follows: "is essential to sustain life or function and warrant immediate attention."

67. "Warrant" means "justify or necessitate"; "officially affirm or guarantee." New Oxford American Dictionary 1949 (Angus Stevenson, Christian A. Lindberg eds., 3rd ed., Oxford University Press 2010).

68. The medical care directive of the Bureau of Prisons Program Statement for acute or emergent medical conditions is mandatory. The conditions that a person exhibits identified as acute or emergent medical conditions necessitates, justifies, officially affirms, or guarantees the inmate receives immediate attention.

69. The Red Lake Detention Center staff had a duty to provide Ms. Yellow-Lussier with immediate attention.

70. Because the Red Lake Detention Center staff did not provide Ms. Yellow-Lussier with immediate attention for her exhibited symptoms, they breached their duty to her as an inmate of the Center.

71. Ms. Yellow-Lussier died.

15

72.     The breach of the duty of the Red Lake Detention Center staff caused Ms. Yellow-Lussier's death.

73.     The breach of the duty of the Red Lake Detention Center staff was a substantial factor in Ms. Yellow-Lussier's death.

74.     The breach of the duty of the Red Lake Detention Center staff was more probable than not the cause of Ms. Yellow-Lussier's death.

75.     The Defendant United States of America is liable for the negligent acts of the Red Lake Detention Center staff acting on its behalf.

76.     The actions of the Defendant United States of America constitutes negligence under Minnesota law.

77.     In addition, it is believed that the Red Lake Detention Center's records regarding Decedent were prepared after her death.

78.     Moreover, it is believed, all other contemporaneous records during the time of her incarceration have either been destroyed or edited to present an exculpatory narrative.

79.     As a direct and proximate result of the conduct previously stated and other tortious acts or omissions or both of the defendant, United States of America, and the resulting death of Ms. Yellow-Lussier, Plaintiff Lois Mae Lussier, has suffered and continues to suffer non-economic losses, including but not limited to: loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, and society, in an amount to be determined according to proof at trial.

80.     As a direct and proximate result of the conduct previously stated and other tortious acts or omissions or both of the defendant, United States of America, and the

16

resulting death of Ms. Yellow-Lussier, Plaintiff Lois Mae Lussier, has suffered and continues to suffer economic losses, including but not limited to: loss of income, loss of support, loss of services, loss of gifts, and loss of other economic benefits, in an amount to be determined according to proof at trial.

81. Plaintiff Lois Mae Lussier, is entitled to actual and compensatory damages, individually and as the Trustee for the heirs and next of kin of Ms. Yellow-Lussier in the amount in excess of $75,000, to be determined at the time of trial. Plaintiff incorporates by reference each allegation in this Complaint, as if fully set forth herein.

## COUNT 2
### *Bivens* Violation

**Unknown Red Lake Detention Center staff, violated Ms. Yellow-Lussier's protected right from cruel and usual punishment under the Eighth Amendment when federal officials refused to give her immediate medical attention as mandated, for three days resulting in her death.**

82. Plaintiff, incorporates each paragraph or allegations is if fully restated to support the claim asserted.

83. To recover damages for a federal agent's violation of an individual's constitutional rights, a plaintiff must establish a (1) constitutional violation; (2) by individual federal defendants action under the color of federal law or authority. See, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

84. The Eighth Amendment to the United States Constitution protects individuals from cruel and usual punishment.

85. The acts or omissions of the unknown defendants occurred within their scope of employment.

17

86.     Plaintiff Lois Mae Lussier may bring this claim under Minnesota's wrongful-death statute, Minnesota Statutes § 573.02.

87.     Ms. Yellow-Lussier was an inmate in and under the custody of the Red Lake Detention Center.

88.     Ms. Yellow-Lussier was under the care, while in the custody of the Red Lake Detention Center, of certain unknown staff members. The unknown staff members were federal agents acting under the color of federal law or authority. The acts or omissions of the unknown defendants occurred within their scope of employment.

89.     The Red Lake Band of Chippewa have entered into a Compact of Self Governance with the United States Department of the Interior.

90.     The Compact of Self Governance includes the authority to administer a detention center, and law enforcement.  The Red Lake Detention Center is under the jurisdiction of the Bureau of Indian Affairs, Office of Justice Services, Department of the Interior.

91.     The Department of the Interior is an agency of the Defendant United States of America.

92.     The Red Lake Detention Center also follows the rules, regulations, or program statements of the U.S. Department of Justice, Federal Bureau of Prisons.

93.     The United States Department of Justice, Federal Bureau of Prisons, regulates all prisons and detention centers of all persons detained or incarcerated within those facilities.

94.     The United States Department of Justice, Federal Bureau of Prisons issues

program statements that govern the patient care of all persons detained or incarcerated within all prisons and detention centers.

95.     Upon Ms. Yellow-Lussier's incarceration on June 10, 2018, she immediately experienced symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained to Red Lake Detention Center staff about her condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

96.     On June 11, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

97.     On June 12, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Yellow-Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

98.     On June 13, 2018, Ms. Yellow-Lussier continued to have and exhibit symptoms of chest pain, difficulty breathing; and coughing up blood. Ms. Brittany Lussier complained about her medical condition to Red Lake Detention Center staff. Staff did not render Ms. Yellow immediate attention.

99.     On June 14, 2018 Red Lake Detention Center staff provided Ms. Yellow-Lussier medical attention and transported her to a local hospital. Ms. Yellow-Lussier's medical condition was in a state that required her to be transported, by helicopter, to the University of Minnesota Medical Center, in Minneapolis, Minnesota.

100.   On June 16, 2018 Ms. Yellow-Lussier died.

101.   Red Lake Detention Center staff knew Ms. Yellow-Lussier was experiencing acute or emergent medical conditions.

102.   Red Lake Detention Center staff knew Ms. Yellow-Lussier's acute or emergent medical symptoms of chest pain, shortness of breath, and coughing up of blood were indicative or related to myocardial infarction.

103.   Red Lake Detention Center staff knew Ms. Yellow-Lussier's acute or emergent medical symptoms of chest pain, shortness of breath, and coughing up of blood were indicative or related to myocardial infarction, despite her age.

104.   Red Lake Detention Center staff knew Ms. Yellow-Lussier was experiencing acute or emergent medical conditions on June 10, 2018, June 11, 2018, June 12, 2018, and June 13, 2018.

105.   Red Lake Detention Center staff did not give Ms. Yellow-Lussier immediate attention for her acute or emergent medical condition.

106.   Under section 7(a) of Federal Bureau of Prisons Program Statement for Patient Care governing the scope of services regarding the categories of care, includes what is "medically necessary—acute or emergent." Section 7(a) of the Federal Bureau of Prisons Policy Statement is accurately quoted for "acute or emergent medical conditions" as follows: "[m]edical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening."

107.   Examples of acute or emergent medical conditions are identified under

section 7(a) of the Bureau of Prisons Program Statement for Patient Care included myocardial infarction, among others.

108.    Conditions under the Bureau of Prisons Program Statement for Patient Care, Section 7(a) to treatment for conditions for the category of acute or emergent medical is accurately quoted as follows: "is essential to sustain life or function and warrant immediate attention." Emphasis added.

109.    "Warrant" means "justify or necessitate"; "officially affirm or guarantee." New Oxford American Dictionary 1949 (Angus Stevenson, Christian A. Lindberg eds., 3rd ed., Oxford University Press 2010).

110.    The medical care directive of the Bureau of Prisons Program Statement for acute or emergent medical conditions is mandatory. The conditions that a person exhibits identified as acute or emergent medical conditions necessitates, justifies, officially affirms, or guarantees the inmate receives immediate attention.

111.    The Red Lake Detention Center unknown staff had a duty to provide Ms. Yellow-Lussier with immediate attention.

112.    Because the Red Lake Detention Center staff did not provide Ms. Yellow-Lussier with immediate attention for her exhibited symptoms, she suffered for three days without medical assistance for her exhibited acute or emergent condition.

113.    Ms. Yellow-Lussier died.

114.    The failure of the Red Lake Detention Center unknown staff, individually or collectively, to provide Ms. Yellow-Lussier immediate attention for her acute or emergent

medical condition was cruel and unusual punishment, indifferent, and inhumane punishment.

115.    The failure of the Red Lake Detention Center unknown staff, individually or collectively, to provide Ms. Yellow-Lussier immediate attention for her medical condition deprived her of her constitutional right to be protected from cruel and unusual punishment that ultimately resulted in her death.

116.    The unknown Red Lake Detention Center staff members were acting within the scope of their authority or within their scope of employment, or both, as federal prison agents or federal prison employees when they violated the constitutional rights of Ms. Yellow-Lussier.

117.    Plaintiff is entitled from the unknown Red Lake Detention Center staff, individually or collectively, to actual, compensatory, and all other damages, including punitive damages, as a result of the Red Lake Detention Center staff violating the constitutional rights of Ms. Yellow-Lussier under the Eighth Amendment, individually, as a trustee representative of Ms. Yellow-Lussier's estate.

## Jury Demand

1.    Plaintiff Lois Mae Lussier, demands that all eligible claims be tried to a jury.

## PRAYER FOR RELIEF

Plaintiff Lois Mae Lussier, requests judgment against the Defendant United States of America for:

(a)    actual and compensatory damages arising from the negligence or

intentional, knowing, or reckless actions of the Defendant United States of America's agents, representatives, or employees in violation of the Federal Torts Claims Act, resulting in Ms. Yellow-Lussier's death;

(b)    actual and compensatory damages, and punitive damages arising from the unknown Red Lake Detention Center staff, agents, or employees of the United States of America, individually or collectively, for their deliberate indifference to provide immediate attention to Ms. Yellow-Lussier's medical conditions by violating her right to be protected from cruel and usual punishment under the Eighth Amendment of the U.S. Constitution;

(c)    reasonable and necessary attorneys' fees and costs, and any other relief available under either federal or state law or both;

(d)    any other relief this Court deems just, necessary, or proper.

**MOHRMAN, KAARDAL & ERICKSON, P.A.**

Dated:  February 25, 2022

  /s/ Gregory M. Erickson
Gregory M. Erickson, Bar No. 276522
William F. Mohrman, Bar No. 168816
Erick G. Kaardal, Bar No. 229647
James R. Magnuson, Bar No. 389084
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 465-0937
Facsimile:  (612) 341-1076
Email: erickson@mklaw.com
Email: mohrman@mklaw.com
Email: magnuson@mklaw.com

**RODGERS LAW OFFICE**

Mark L. Rodgers, Bar No. 130553
1421 Bemidji Avenue North, Suite 2
Bemidji, MN 56601
Telephone: (218) 444-5297
Facsimile: (218) 444-6060
Email: mark@mninjurylaw.com

*Attorneys for Plaintiff*